**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.:**

SECURITIES AND EXCHANGE COMMISSION,    )
    )
                 **Plaintiff,**    )
    )
v.    )
    )
DEANDRE P. SEARS, and    )
MASEARS LLC d/b/a PICASSO GROUP,    )
    )
                 **Defendants.**    )
    )

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## INTRODUCTION

1.    From approximately 2014 through February 2020, Defendants Deandre P. Sears ("Sears") and his company MASears LLC d/b/a Picasso Group acted as unregistered brokers on behalf of investment funds ("EquiAlt Funds") managed by EquiAlt, LLC ("EquiAlt"). The Defendants raised at least $25 million from the unregistered offer and sale of securities in EquiAlt Funds to more than 145 retail investors located in 25 states. From these sales, the Defendants received approximately $3.5 million in transaction-based sales commissions, netting approximately $2.15 million after payments to other sales agents.

2.    At all relevant times, the Defendants were not registered as broker-dealers with the Commission or associated with a registered broker-dealer. EquiAlt's securities offerings were not registered with the Commission and were not exempt from registration.

3.    By engaging in this conduct the Defendants each violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)], and Section

15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)].  Unless

enjoined, the Defendants are reasonably likely to continue to violate the federal securities laws.

The Commission also seeks against all Defendants disgorgement of ill-gotten gains along with

prejudgment interest thereon, and civil money penalties.

## DEFENDANTS

4.      **DeAndre P. Sears**, 50, is a resident of Las Vegas, Nevada.  During the relevant

period, Sears operated and controlled MASears LLC ("MASears"), which does business as Picasso

Group ("Picasso").  Sears is not currently registered with the Commission or the Financial Industry

Regulatory Authority ("FINRA"), nor was he during the time period relevant to the allegations

contained herein.  Sears was also identified in certain EquiAlt private placement memoranda

("PPM") as EquiAlt's President of Business Development and Marketing, Managing Director of

Investments, or Vice President of Investor Relations.

5.      **MASears d/b/a Picasso** is a Nevada limited liability company located in Las

Vegas, Nevada.  During the relevant period, Sears controlled Picasso, served as its Managing

Partner, and treated it as his alter ego.  Picasso has never been registered with the Commission,

FINRA or any state securities regulatory authority.

## JURISDICTION

6.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and

22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]; and Sections 21(d), 21(e) and

27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

7.      This Court has personal jurisdiction over the Defendants and venue is proper in the Middle District of Florida because Defendants transacted business in this District relating to the sale of the EquiAlt Funds.

8.      In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## FACTUAL ALLEGATIONS

9.      From at least 2016 through February 11, 2020 (when the Commission filed an emergency action against EquiAlt and others), EquiAlt orchestrated a massive Ponzi scheme relating to its management of the EquiAlt Funds.  The scheme involved at least 1,100 investors who invested approximately $170 million in the EquiAlt Funds.

### A.      The EquiAlt Ponzi Scheme and Other Fraudulent Conduct

10.      At all relevant times, Brian Davison controlled EquiAlt, whose primary business purpose was the management of the EquiAlt Funds.  Davison, along with EquiAlt's Vice President Barry Rybicki, told investors that the EquiAlt Funds would use their money to purchase real estate in distressed markets throughout the United States and that these real estate investments would generate revenues sufficient to pay investors interest rates of 8% to 10% per annum on their investments.  The EquiAlt Funds, however, were unprofitable almost from inception.

11.      Without sufficient revenues to pay the money owed to investors, EquiAlt soon resorted to fraud, using new investor money to pay the interest promised to existing investors.  EquiAlt perpetuated this fraud for several years until the Commission filed its emergency action

in February 2020 and the Court entered a temporary restraining order, an asset freeze, and appointed a receiver over the EquiAlt Funds.

12.     In furtherance of this fraudulent scheme, EquiAlt, Rybicki, and Davison also made numerous material misrepresentations and omissions to investors in connection with the offer and sale of investments in the EquiAlt Funds.

**B.     EquiAlt Funds' Securities and Misrepresentations to Investors**

13.     EquiAlt, through a network of unregistered sale agents including the Defendants in this action, sold investors 3-year or 4-year term debentures issued by the EquiAlt Funds providing a fixed annual return of 8% to 10%.  Many of the investors were elderly, retired, and used their IRAs to invest in the EquiAlt Funds.  Moreover, many of the investors were unaccredited or unsophisticated in that they lacked knowledge or expertise in financial or business matters, were not capable of evaluating the merits or risks of the investment, and were not otherwise capable of bearing the economic risks of the investment.  Many of the investors in this Ponzi scheme were attracted to investments in the EquiAlt Funds by representations that the investments were secure, safe, low risk, and conservative.

14.     In addition to the misrepresentations about the safety and security of investing in the EquiAlt Funds, EquiAlt made numerous other misrepresentations and omissions concerning the use of investor proceeds, registration with the Commission, compliance with applicable laws, and management of the EquiAlt Funds.  In particular, EquiAlt misrepresented, or failed to disclose adequately to investors, that their investment proceeds were being used to pay substantial commissions to unregistered sales agents.  Moreover, investors were told that 90% of their funds would be used to invest "in property."  Yet, less than 50% of investor funds were actually used for

that purpose.  In fact, most of the remaining funds were used for improper purposes such as the payment of millions of dollars in undisclosed fees and bonuses to EquiAlt, Davison and Rybicki.

       C.      **Defendants Offered and Sold EquiAlt Securities**

15.      Over a period of several years, EquiAlt recruited a network of unregistered sales agents throughout the United States to sell the fixed rate debentures issued by the Funds.  These debentures are securities within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act.  EquiAlt paid these unregistered sales agents, including the Defendants, commissions ranging from 6-12% of the amount invested in the EquiAlt Funds.

16.      Sears knew Davison since 2009.  Some years later, Davison contacted Sears to discuss EquiAlt and the products it offered.  As early as 2013, Sears assisted EquiAlt with finding sales agents to market and sell the Funds and was paid finder's fees (from EquiAlt's Funds) for his efforts.  By 2014, the relationship between Sears and EquiAlt had evolved into one where Sears was selling EquiAlt Funds directly to investors in addition to selling the Funds through third-party sales agents.

17.       Sears was also listed on several of EquiAlt's PPMs as EquiAlt's President of Business Development and Marketing, Managing Director of Investments, or Vice President of Investor Relations, although he was not an employee of EquiAlt.

18.      Out of the $170 million that EquiAlt raised from investors, Defendants raised at least $25 million from the offer and sale of the EquiAlt Funds' securities to more than 145 retail investors located in several states.  Many of these investors were unaccredited, unsophisticated, and elderly people who invested through their IRA accounts.

19.      Although the Defendants purportedly offered the EquiAlt securities under a Rule 506(b) exemption from registration, the offering did not qualify as such because many of the

investors were neither accredited nor sophisticated.  Furthermore, the Defendants did not provide an audited balance sheet or financial statements to the unaccredited EquiAlt investors. Consequently, the Defendants engaged in unregistered securities transactions for which an exemption from registration did not apply.

20.     Moreover, when the Defendants sold the EquiAlt securities they held no securities licenses, were not registered with the Commission as broker-dealers, and were not associated with a registered broker-dealer.

21.     Through Picasso, his alter ego company, Sears marketed and sold the EquiAlt Funds.  Indeed, Picasso marketed the EquiAlt Funds on its website and in email communications sent to potential investors.  Sears also elicited the help of other third-party sales agents and, through Picasso, paid them commissions for selling the EquiAlt securities.

22.     At all relevant times, the Defendants engaged in sales activity indicative of a broker, including (1) soliciting new investors; (2) communicating directly with investors by phone, by e-mail, or in person; (3) espousing the merits of the EquiAlt Funds' securities to these investors; (4) reassuring investors about the "risk" of the investment or about the EquiAlt business model; and (5) receiving transaction-based compensation.

23.     The Defendants, directly and indirectly, solicited new EquiAlt investors.  Sears personally solicited investors through word-of-mouth, by touting EquiAlt investments at in-person presentations, over lunch or in the homes of prospective investors, and by directing prospective investors to Picasso and EquiAlt websites.  He also promoted the sale of the EquiAlt securities by sending PPMs, subscription documents, and marketing materials to prospective investors. Additionally, Sears provided the marketing materials used by other sales agents, and developed a landing page to market the Funds and find potential investors.  If a potential investor seemed likely

to invest, the sales agent would schedule a telephone call to connect the potential investor to Sears at Picasso, who would complete the sales transaction.

24.     Sears also told prospective investors (through the Internet, by phone, and in person) about EquiAlt's business model, the structure and terms of the investment, the value of EquiAlt's real estate portfolio, EquiAlt's history of success, the rate of return, and the safety and risks associated with the investment.

25.     Picasso communicated directly with investors while facilitating the unregistered sales transactions and serving as the intermediary between EquiAlt and the investors.  For example, Picasso routinely emailed investors: (1) marketing materials; (2) "tear sheets" providing glowing updates about the EquiAlt Funds; (3) EquiAlt updates on Picasso letterhead; (4) account statements; (5) wiring instructions; and (6) offering documents, including the PPM and investor questionnaire.  Notably, the Defendants did not verify whether a particular investor was in fact "accredited" before submitting the investor's packet to EquiAlt.

26.     Sears, primarily through Picasso, received approximately $3.5 million in commissions from EquiAlt for selling the EquiAlt Funds' securities.  Of that amount, after he paid commissions to other sales agents, Sears netted approximately $2,157,426 in transaction-based compensation for his sales of the EquiAlt securities.  Defendants typically earned 4-12% of the amount invested by investors.  Accordingly, Defendants unlawfully offered and sold the EquiAlt securities.

## CLAIMS FOR RELIEF

## COUNT I

## Violations of Sections 5(a) and 5(c) of the Securities Act

27.     The Commission repeats and realleges paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offered and sold by the Defendants as described in this Complaint and no exemption from registration existed with respect to these securities.

29.     From approximately 2014 and continuing through approximately February 2020, the Defendants directly and indirectly:

>    (a)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

>    (b)     carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

>    (c)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

30.     By reason of the foregoing the Defendants violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 15(a)(1) of the Exchange Act

31.     The Commission repeats and realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

32.     From approximately 2014 and continuing through approximately February 2020, the Defendants, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when they were not associated with an entity registered with the Commission as a broker-dealer.

33.     By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.
### Permanent Injunctive Relief

Issue a Permanent Injunction enjoining the Defendants from violating Sections 5(a) and 5(c) of the Securities Act and Section 15(a)(1) of the Exchange Act.

9

**B.**
**Disgorgement and Prejudgment Interest**

Issue an Order directing the Defendants to disgorge on a joint and several basis all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

**C.**
**Civil Money Penalties**

Issue an Order directing the Defendants to pay civil money penalties on a joint and several basis pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

**D.**
**Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**E.**
**Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: December 31, 2020                    Respectfully submitted,

By:    s/ Alise Johnson
       Alise Johnson
       Senior Trial Counsel
       Fla. Bar No. 0003270
       E-mail: johnsonali@sec.gov
       Direct Telephone:  (305) 982-6385
       *Lead Attorney*

Chanel T. Rowe, Esq.
Counsel
Florida Bar No. 0112722
Email: rowech@sec.gov

Attorneys for **SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (703) 813-9526

11